FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUL -3 PM 2:54
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ARTHUR J. MARSHALL, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-097 |
| | ) | (Formerly CR 109-078) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Arthur J. Marshall, Jr., an inmate currently incarcerated at FPC – Edgefield in Edgefield, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

**I.     BACKGROUND**

On June 4, 2009, a federal grand jury returned an indictment charging Petitioner with eight counts of bank fraud, in violation of 18 U.S.C. § 1344, two counts of mail fraud, in violation of 18 U.S.C. § 1341, and twelve counts of money laundering, in violation of 18 U.S.C. § 1957; the indictment also included a forfeiture allegation against money and real and personal property obtained from the crimes alleged in the bank fraud and mail fraud counts. United States v. Marshall, CR 109-078, doc. no. 3 (S.D. Ga. June 4, 2009) (hereinafter "CR 109-078"). Petitioner retained Kieran J. Shanahan and James Pete

Theodocion as counsel to represent him. Id., doc. nos. 10, 23.

Pursuant to a written plea agreement, Petitioner pleaded guilty to two of the bank fraud counts: Counts Two and Three. Id., doc. nos. 40, 41. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a 28 U.S.C. § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id., doc. no. 40, p. 7. Furthermore, the plea agreement provided that Petitioner:

> . . . understands that the U.S. Probation Office will prepare a presentence investigation report for the Court, and that the U.S. Probation Office will consider <u>all</u> of the defendant's conduct related to the offense for which he is pleading, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney.
> **The defendant advises the Court that the defendant understands that if the relevant conduct, guideline sentencing range, or sentence imposed by the Court is more or greater than the defendant expected or, in the case of relevant conduct, is found to be more extensive than the defendant has admitted to, the defendant will still have no absolute right to withdraw his guilty plea.**

Id. at 9 (emphases in original).

In return, the government agreed to dismiss the remaining counts against Petitioner, to stipulate that the loss to victims did not exceed $2,500,000; not to object to a 2-point reduction in Petitioner's offense level for acceptance of responsibility, and to move for an

additional 1-point reduction for acceptance of responsibility. Id. at 2-3. In addition, the government agreed to consider whether to file a motion for downward departure from the applicable Sentencing Guidelines range if Petitioner's cooperation qualified as "substantial assistance" pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1. Id. at 3-4.

At the Rule 11 hearing held on October 14, 2009, the Honorable J. Randal Hall, United States District Judge, summarized the terms of the plea agreement and explained to Petitioner that he was "waiving the right to directly appeal [his] conviction and sentence" and was "giving up [his] right to collaterally appeal that sentence in a post conviction proceeding," subject to the two limited situations provided for in the plea agreement. Id., doc. no. 60, pp. 21-22. Judge Hall asked Petitioner if he understood and agreed to these provisions of the plea agreement. Id. at 22. Petitioner responded that he did. Id. Judge Hall also informed Petitioner in detail that he would be waiving a number of other rights by pleading guilty. Id. at 8-12. When Judge Hall asked whether Petitioner was satisfied with the representation of his counsel, Petitioner responded that he was. Id. at 13.

Judge Hall also explained at the Rule 11 hearing that the maximum penalty for Petitioner's crimes was a term of not more than thirty years of incarceration, followed by a term of supervised release of not more than five years, a fine of not more than $1,000,000, and a special assessment of $100. Id. at 16. When Judge Hall asked whether Petitioner understood the potential penalties, Petitioner responded, "Yes, sir." Id. Moreover, Judge Hall explained the role of the Sentencing Guidelines, emphasizing that they were only advisory and not binding on the Court. Id. at 19. After Judge Hall explained the advisory nature of the Sentencing Guidelines, the record reflects the following exchange occurred between Judge Hall and Petitioner:

3

> Judge Hall: . . . [A]fter today I will direct the probation office to conduct a presentence investigation. They will look at a number of factors. They will look at the crimes for which you've pled guilty and been convicted. They will look at whether you've accepted responsibility. They will look at your past record, whether you have a criminal record or not. And there are other factors, but those are the general three they will look at.
>
> Based upon those factors and applying the sentencing guidelines that we have to operate under, the probation office will provide the Court the final guideline range. A low end of the sentencing and the high end. And . . . we typically sentence within that range, but I do have the ability to go outside the range. Do you understand that?
>
> Petitioner: Yes, sir.
>
> Judge Hall: Have you previously discussed the sentencing guidelines with your attorney?
>
> Petitioner: Yes.
>
> Judge Hall: I caution you, Mr. Marshall, that if anyone has provided you with an estimate of your potential sentencing guidelines range, at that time it is an estimate only. Because not until this presentence investigation is complete will anyone, including me, know what your final range will be. Do you understand that?
>
> Petitioner: Yes, sir.
>
> Judge Hall: Has anyone promised you, represented to you, predicted, or made a prophesy that you would receive a specific sentence in this case?

Id. at 19-20. Under penalty of perjury, Petitioner responded, "No, sir." Id. at 20. Petitioner further stated that no one had forced or required him to plead guilty. Id. at 6.

In addition, Special Agent Rebecca Harrison with the Federal Bureau of Investigation provided testimony as to the factual basis for the plea; Petitioner clarified some of the information Special Agent Harrison provided, but he confirmed the truth of the factual basis for the plea. See id. at 26-41. At the conclusion of the Rule 11 colloquy, Judge Hall accepted Petitioner's guilty plea. Id. at 41.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided a base offense level of seven, as well as a

4

16-level enhancement because the loss exceeded $1,000,000 but did not exceed $2,500,000 (pursuant to the stipulation in the plea agreement).[1] PSI ¶¶ 28-29. The PSI also provided for a two-level enhancement because the offense involved "sophisticated means," a two-level enhancement because Petitioner derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, and a two-level enhancement due to Petitioner's role in managing or supervising the actions of another participant in the criminal activity. PSI ¶¶ 30-31, 33. The PSI also provided for a three-level reduction in Petitioner's base offense level for acceptance of responsibility, resulting in a total offense level of 26. PSI ¶¶ 36-37. Petitioner was assigned a criminal history category of I. PSI ¶ 48. Based on these factors, the PSI provided that Petitioner's Sentencing Guidelines range was 63 to 78 months of imprisonment. PSI ¶ 69.

Petitioner filed one objection to the PSI, arguing that the two-level enhancement for Petitioner's role as a manager or supervisor of the offense was improper; Petitioner also filed three points of clarification, which were resolved prior to the June 14, 2010 sentencing hearing. PSI, addendum; CR 109-078, doc. no. 61, p. 4. During the sentencing hearing, Judge Hall heard arguments from Petitioner and the government with regard to Petitioner's objection to the two-level enhancement for his role in the offense. CR 109-078, doc. no. 61, pp. 4-12. Specifically, Petitioner argued that he could not have managed one of his employees in furthering the fraud because it was unclear whether she was a participant in the fraudulent scheme. Id. at 4-6, 8-9. Although the employee was available to testify at the

---

[1] Although the PSI provided that the loss did not exceed $2,500,000 pursuant to a stipulation in the plea agreement, the PSI calculated the actual loss to be $3,607,138.65. PSI ¶¶ 20, 22-23. The PSI also specified that of the $3,607,138.65 in actual loss, it excluded $77,136 from the loss attributable to Petitioner on the bank fraud counts because this amount represented a loss to American Legion Post 505, which was the victim of an unrelated, uncharged fraud offense. PSI ¶ 21; see also CR 109-078, doc. no. 40, p. 4.

5

hearing, Petitioner's counsel stipulated to the employee's grand jury testimony. Id. at 8. After some discussion, Judge Hall found that because this testimony reflected that Petitioner's employee was aware that she had prepared illegitimate documents, she knowingly furthered the fraud and was therefore a participant in the fraudulent scheme, making the two-point enhancement appropriate. Id. at 9-12.

Judge Hall adopted the PSI's conclusions and granted the government's motion pursuant to U.S.S.G. § 3E1.1(B) for a three-point reduction for Petitioner's acceptance of responsibility. Id. at 12, 27. Further, Judge Hall heard testimony from a number of victims and discussed the numerous letters of support that were submitted on Petitioner's behalf. Id. at 12-22. Judge Hall sentenced Petitioner to 69 months of imprisonment and ordered him to pay restitution in the amount of $3,607,138.65. Id. at 33. Consistent with his plea agreement, Petitioner did not appeal.

On June 29, 2011, Petitioner timely filed the instant § 2255 motion,[2] in which he raises the following grounds for relief: (1) his guilty plea was not knowing or voluntary; (2) the District Court erroneously adopted the loss calculation provided in the PSI; (3) the District Court erred in permitting testimony from a representative of American Legion Post 505 because this entity was not a victim of the offenses for which Petitioner was sentenced; (4) the District Court erroneously applied a two-level enhancement for use of sophisticated means; (5) the District Court erroneously applied a two-level enhancement for receipt of more than $1,000,000 as a result of the offenses; and (6) his trial counsel provided ineffective

---

[2]Under Houston v. Lack, 487 U.S. 266, 276 (1988), Petitioner's motion is deemed filed on the date of delivery to prison officials for mailing. See also Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (*per curiam*) (§ 2255 motion deemed filed on date the petitioner "signed, executed, and delivered his petition to prison authorities for mailing"). The signature date on Petitioner's motion is June 23, 2011. (See doc. no.1, p. 62.)

6

assistance in that he[3]: (a) misadvised Petitioner of the Sentencing Guidelines range that would apply to him if he pleaded guilty; (b) failed to explain to Petitioner that conduct pertaining to dismissed offenses would be examined by the Probation Office if he pleaded guilty; (c) improperly consulted with Petitioner about appealing his sentence; (d) failed to follow Petitioner's instruction to appeal his sentence; (e) failed to discover and challenge the improper enhancements in the PSI due to his alleged lack of familiarity with the Sentencing Guidelines; (f) failed to object to the testimony from American Legion Post 505; and (g) improperly stipulated that the District Court could rely on the grand jury transcript at sentencing. (See doc. no. 1.)

Respondent contends that Petitioner's § 2255 motion should be denied because his guilty plea was knowing and voluntary and thus all of his § 2255 claims are barred by the collateral attack waiver set forth in his plea agreement. (See doc. no. 6.) Petitioner disputes these contentions, arguing that the collateral attack waiver should not bar his claims. (See doc. no. 1, p. 12; doc. no. 11.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need For Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised.

---

[3]Although Petitioner acknowledges in his § 2255 motion that he was represented by both Mr. Shanahan and Mr. Theodocion, it is apparent that his complaints of ineffective assistance of counsel are directed at Mr. Shanahan. (See generally doc. no. 1.)

Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case.

### B. Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in

> this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "Clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (quotation omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charges to which Petitioner was pleading guilty, as well as the maximum penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charges and the maximum penalty that might be imposed. CR 109-078, doc. no. 61, p. 16. Judge Hall also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 8-12. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence, and that no one had

9

forced, pressured, or induced him to plead guilty. Id. at 6, 19-20.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charges to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and, as explained in detail below, Petitioner fails to show otherwise with his assertion that his counsel misadvised him about the maximum sentencing exposure faced and failed to explain that conduct to which he was not pleading guilty would be taken into consideration at sentencing. (See doc. no. 1, pp. 7-11.) As Respondent persuasively argues, Petitioner's alleged misunderstanding does not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea. (Doc. no. 6, pp. 5-10.) Notably, Petitioner "does not contest his admission of guilt" but rather asserts that his 69-month sentence is "overstated." (Doc. no. 1, p. 5.) These statements are clearly insufficient to carry his burden that he would not have entered the guilty plea but for his counsel's alleged errors. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily, and he is therefore not entitled to relief on Ground One of his motion.

### C. Effect Of Collateral Attack Waiver In The Plea Agreement

Having established that Petitioner's guilty plea was entered knowingly and voluntarily, the Court proceeds to address whether Petitioner is entitled to relief on any of the remaining grounds in his § 2255 motion. For the reasons set forth below, the Court finds that Grounds Two through Five are barred by the collateral attack waiver in his plea agreement, as are five of the seven claims raised in Ground Six of his motion asserting that he received ineffective assistance of counsel. Further, while Petitioner's two remaining claims that his counsel rendered ineffective assistance – by (a) allegedly misleading him as

10

to the sentencing range he faced and (b) failing to inform him that his conduct from dismissed counts would be considered – are not barred by the collateral attack waiver, the Court finds these claims to be without merit.

### 1. Knowing And Voluntary Nature Of Waiver

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993).[4] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then all of Petitioner's claims that do not call into question the knowing and voluntary nature of his guilty plea are barred from review. See United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (enforcing waiver provision where defendant was specifically questioned about waiver); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 109-078, doc. no. 40, p. 7. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the collateral attack waiver

---

[4]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1350-51; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

11

provision. Id., doc. no. 61, p. 22. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id. at 22-23.

The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid. Accordingly, Petitioner's claims in Grounds Two through Five are barred by the waiver. Furthermore, as explained below, all but two of Petitioner's claims of ineffective assistance of counsel raised in Ground Six of his motion are similarly barred by the waiver.

"An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

The same reasoning applies to claims (e), (f), and (g) in Ground Six of Petitioner's motion that his trial counsel failed to discover and challenge improper sentencing enhancements in the PSI, failed to object to testimony from American Legion Post 505 at sentencing, and improperly stipulated to the use of grand jury testimony at sentencing. First,

12

these claims do not alter the Court's conclusion that Petitioner's guilty plea was knowing and voluntary. Second, these claims do not call into question the validity of the waiver provision in the plea agreement. These claims are therefore barred from review by the collateral attack waiver. See Williams, 396 F.3d at 1342 n.2.

Although the Eleventh Circuit has not addressed the exact issue presented here, the rationale from Williams also applies with respect to claims (c) and (d) in Ground Six that Petitioner's counsel was ineffective in that he improperly consulted with him about appealing his sentence and failed to file an appeal despite Petitioner's request that he do so.[5] Because these claims do not affect the validity of the guilty plea or relate to the waiver in the plea agreement, they are also barred by the collateral attack waiver. See id.; United States v. Falcon-Sanchez, 416 F. App'x 728, 730 (10th Cir. 2011) (holding that ineffective assistance claim based on counsel's failure to file notice of appeal as instructed by petitioner was barred by collateral attack waiver because the claim "[did] not relate to the validity of the plea or the waiver"); see also United States v. Morgan, 284 F. App'x 79, 87 (4th Cir. 2008) (*per curiam*) (holding that ineffective assistance claim based on counsel's failure to file appeal was barred by collateral attack waiver); Skaggs v. United States, 104 F. App'x 462, 464 (6th Cir. 2004) (same). But see United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007) (holding that ineffective assistance claim based on counsel's failure to file appeal was not barred by

---

[5]This Court encountered a materially similar issue in a previous § 2255 action, in which it recommended that the petitioner's ineffective assistance of counsel claim for failing to consult about a direct appeal following sentencing was barred by his collateral attack waiver. Jones v. United States, CV 111-102, doc. no. 6, pp. 8-11. Judge Hall adopted the Court's recommendation over the petitioner's objections and granted a certificate of appealability as to the issue of whether the collateral attack waiver barred the ineffective assistance claim for failure to consult about a direct appeal. Id., doc. no. 9. Jones is currently on appeal before the Eleventh Circuit. Jones v. United States, No. 12-10562 (11th Cir. May 23, 2012).

appeal and collateral attack waiver).

Additionally, the determination that these claims are barred by the collateral attack waiver does not run afoul of the decision in United States v. Gomez-Diaz, 433 F.3d 788 (11th Cir. 2005). In that case, the Eleventh Circuit held that a § 2255 petitioner who had entered into a valid appeal waiver did not have to show a meritorious ground for appeal in order to prevail on a claim that his counsel was ineffective for failing to file a notice of appeal when instructed to do so. Id. at 793-94. In contrast to the issue addressed in Gomez-Diaz, the determinative question in the instant case is whether, assuming the truth of Petitioner's allegations that his counsel improperly consulted with him about appealing his sentence and failed to appeal after being requested to do so, Petitioner is nevertheless barred from raising these claims of ineffective assistance of counsel by a valid waiver of his right to collaterally attack his sentence.

In other words, the Gomez-Diaz decision focused on the waiver of the petitioner's right to file a *direct appeal* – in particular, whether the existence of a *direct appeal* waiver precluded an ineffective assistance of counsel claim absent a showing of a meritorious ground for appeal. See id. The focus of the instant case is the *collateral attack* waiver. That waiver represents a forfeiture of the right to collaterally attack any error – even a "blatant error" such as counsel's failure to consult about or file a direct appeal – that does not fall within the previously discussed exception from Williams, *supra*. See United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (reasoning that a waiver of the right to pursue an appeal or collateral attack "includes a waiver of the right to appeal [or collaterally attack] blatant error"). Therefore, following the rationale of Williams, the Court concludes that enforcement of the collateral attack waiver in the instant case does not contradict the

Eleventh Circuit's holding in Gomez-Diaz.[6]

### 2. Ineffective Assistance of Counsel Claims in Ground Six Relating to Knowing and Voluntary Nature of Guilty Plea Are Not Barred By Waiver, but Lack Merit

Notwithstanding the analysis above, Petitioner's remaining claims in Ground Six – that Petitioner's counsel (a) misadvised him of the Sentencing Guidelines range that would apply to him if he pleaded guilty and (b) failed to explain to Petitioner that conduct pertaining to dismissed offenses would be examined by the Probation Office – are not precluded by his appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As these claims challenge his counsel's performance as it relates to the validity of Petitioner's plea or waiver (inasmuch as they call into question whether Petitioner entered into his plea agreement knowingly), these claims are not barred by the provision in the plea agreement waiving his appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a

---

[6]Of note, in reaching its decision in Gomez-Diaz, the Eleventh Circuit announced that its opinion was in accord with the Tenth Circuit's treatment of the same issue in United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005). The Tenth Circuit later clarified its decision in Garrett in addressing the issue presented in the instant case, and proceeded to hold that claims of ineffective assistance of counsel premised on counsel's failure to file a notice of appeal are barred by a valid collateral attack waiver. Falcon-Sanchez, 416 F. App'x at 730-31. Thus, the Tenth Circuit's case law concerning these issues further illustrates that the Court's determination in the instant case is in harmony with the Eleventh Circuit's decision in Gomez-Diaz.

favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be

16

prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, Petitioner cannot show prejudice because his claims are contradicted by the record. First, while Petitioner argues that he did not knowingly plead guilty because he relied on counsel's inaccurate estimation of the likely sentence he faced (doc. no. 1, p. 7), the Rule 11 testimony reflects that after Judge Hall asked Petitioner whether anyone had promised that he would receive a specific sentence, Petitioner responded, under penalty of perjury, "No, sir." CR 109-078, doc. no. 61, p. 20.

Second, although Petitioner contends that he did not knowingly plead guilty because his counsel failed to explain that all conduct, including conduct based on dismissed counts, would be taken into consideration at sentencing (doc. no. 1, pp. 9-10), the plea agreement clearly provides that "all" of Petitioner's conduct would be considered. CR 109-078, doc. no. 40, p. 9. Moreover, the plea agreement provided that Petitioner would have no absolute right to withdraw his plea even if the relevant conduct was more or greater than he expected, id., and Petitioner's sworn testimony at the Rule 11 hearing reflects that he read and discussed the plea agreement with his attorney before signing it. Id., doc. no. 61, p. 23.

17

Furthermore, Judge Hall explained that the Probation Office would look to a variety of conduct, including, but not limited to, crimes for which Petitioner was pleading guilty, Petitioner's acceptance of responsibility, and his past criminal record. Id. at 19.

In short, both of Petitioner's remaining claims are squarely contradicted by his sworn testimony at the Rule 11 hearing, and his belated, self-serving arguments are unavailing. See Blackledge, 431 U.S. at 74; United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." (citing United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975))). Because Petitioner's two remaining claims of ineffective assistance of counsel are contradicted by the record, he cannot show that he suffered prejudice as a result of these alleged errors by counsel. See Strickland, 466 U.S. at 687. In sum, Petitioner is not entitled to relief on any of the claims asserted in his § 2255 motion.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 3rd day of July, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE